Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone: (516) 268-7080
spencer@spencersheehan.com

Kleinman LLC
Abraham Kleinman
626 RXR Plaza
Uniondale, NY 11556-0626
Tel: (516) 522-2621
akleinman@kleinmanllc.com

United States District Court
Southern District of New York

7:21-cv-00151

Sharon Pizarro, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Class Action Complaint

Ferrara Candy Company,

Defendant

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Ferrara Candy Company ("defendant") manufactures, labels, markets and sells shortbread cookies covered in fudge under the Keebler brand ("Product").

2. The Product is packaged in various sizes (mini, regular) and sold to consumers from retail and online stores of third-parties.

3. The relevant front label representations include "Made With Real Keebler Fudge," "Fudge Stripes" and a picture of chocolate fudge.



4. The representation as being made with "real [Keebler] fudge" is false, deceptive and misleading because it lacks the ingredients essential to any fudge, let alone "real" fudge.

5. Fudge is a simple food that is easily made at home.

6. According to many dictionary definitions, fudge "is a type of sugar candy that is made by mixing sugar, butter and milk."[1]

7. Fudge typically contains chocolate or cocoa but can be flavored with anything.

[1] Wikipedia contributors. "Fudge." *Wikipedia, The Free Encyclopedia*. Wikipedia, The Free Encyclopedia, 5 Jan. 2021. Web. 8 Jan. 2021.

8. The ingredients are combined and heated to about 235° — 240°F until the mixture reaches the "softball" stage.

9. The "softball" stage means the mixture can form a soft pliable ball.

10. At this juncture, the fudge will be soft and chewy but not too hard to bite when it cools.

11. According to the American Bakers Association's 2019 Power of Bakery report, 50% of consumers look for "real" ingredients when buying indulgent bakery products.

12. Trade publications have described "real" ingredients as recognizable, what a consumer may have in their "kitchen cupboard."

13. The average consumer spends fifteen seconds deciding to purchase a specific product, and truthful, non-deceptive labeling gives them confidence to make quick buying decisions.

14. When consumers observe the representation "Made With Real Keebler Fudge," they will expect the fudge used in the Product contains the types of "real" ingredients which are essential to fudge – sugar, milk and butter.

15. However, the front label representation is false and misleading because the Product contains ingredients inconsistent with any kind of "real" fudge, as its fudge contains vegetable oil, invert syrup and whey, instead of butter, sugar and milk.

**INGREDIENTS:** ENRICHED FLOUR (WHEAT FLOUR, NIACIN, REDUCED IRON, VITAMIN B1 [THIAMIN MONONITRATE], VITAMIN B2 [RIBOFLAVIN], FOLIC ACID), SUGAR, VEGETABLE OIL (SOYBEAN, PALM KERNEL AND PALM OIL), INVERT SYRUP, COCOA PROCESSED WITH ALKALI, WHEY, CONTAINS 2% OR LESS OF LEAVENING (BAKING SODA, SODIUM ACID PYROPHOSPHATE, MONOCALCIUM PHOSPHATE), SALT, SORBITAN TRISTEARATE, MOLASSES, SOY LECITHIN, NATURAL AND ARTIFICIAL FLAVORS.

16. Since the ingredients for the food are listed together, i.e., the cookies and fudge are not identified separately, it is necessary to go through the ingredients and identify those which correspond to the cookie base and the fudge topping.

17. The cookie is made mainly with flour, sugar, vegetable oil, leavening and salt.

18. The fudge ingredients are easily identifiable as including vegetable oil, invert syrup and whey (and cocoa).

19. The vegetable oils used in the fudge portion of the Product include soybean, palm kernel and palm oil.[2]

20. The Product lacks butter, an essential ingredient to any fudge, but especially "real"

[2] Palm kernel and palm oil are solid at room temperature.

fudge.

21. The dictionary defines fudge as a "a soft candy made from sugar, butter, and milk or cream."[3]

22. Reasonable consumers expect "real" fudge to have butter instead of vegetable oil fats.

23. The importance of butter vis-à-vis non-butter vegetable oils (fats) in making fudge is widely acknowledged.

24. One popular recipe website advises, "When making fudge, be sure to use good quality butter and do not substitute margarine (vegetable oils)," since they contain more water and can prevent the fudge from setting up properly.[4]

25. Another site cautions, "Look for recipes that call for butter instead of margarine (vegetable oils)."[5]

26. Another writer states, "Never use margarine (vegetable oils) instead of butter, because your fudge won't taste as good and will have a shorter shelf life."[6]

27. The other dairy ingredient in real fudge is milk, which provides a creamy texture.

28. Defendant's "real" fudge does not contain milk but is made with whey.

29. Whey is the watery part of milk that is separated from the coagulable part or curd, and a by-product of cheese manufacturing.

30. Whey is mainly protein and lacks the milkfat present in real milk.

31. The Product's fudge also contains invert sugar, a combination of glucose and fructose.

[3] Fudge definition – Google search.
[4] Use Real Butter For Making Best Fudge, RecipeTips.com.
[5] Easy Fudge Making Tips, The Happy Housewife.
[6] Calico Ingredients 101, Fudge Mix: Pre-measured ingredients, Calico Cottage.

32. Similar to high-fructose corn syrup, this commercially used liquid sweetener inhibits crystallization in fudge, but is not an ingredient consumers have in their cupboard.

33. Most consumers are unaware of the distinction between invert sugar and sugar, and do not consider it a typical ingredient in "real" fudge.

34. The absence of traditional dairy ingredients such as butter and milk and their substitution with vegetable oils and whey means the fudge provides less satiety, has a waxy and oily mouthfeel and leaves an aftertaste.

35. Vegetable oils are not considered "real" ingredients by consumers since they are based on the conversion of soybean and palm fruit to solid and liquid mass through hydrogenation and interesterification.

36. Butter and milk are the epitome of "real" ingredients since they are unprocessed and maintain their original form from the time they are produced until the time they are incorporated into other foods.

37. Dairy ingredients impart a creamy, rich taste to fudge, as butter and milk contain hundreds of lactones, which are well-known aroma compounds which contribute to taste.

38. Consumption of vegetable oils is linked to numerous health problems, like increased chances of heart disease.

39. Butter consumption does not raise cholesterol the way vegetable oils do.

40. Although butter and milk contain saturated fat and cholesterol, they also contain the fat-soluble vitamins A, D, E, and K.

41. Defendant misrepresented the Product through affirmative statements and omissions.

42. Defendant sold more units of the Product and at higher prices than it would have in the absence of the misrepresentations and omissions, resulting in additional profits at the expense

of consumers like plaintiff.

43. The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

44. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for it.

45. The Product is sold for a price premium compared to other similar products, no less than $2.19 for a 3 OZ cup, higher than it would otherwise be sold for absent the misleading representations.

Jurisdiction and Venue

46. Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

47. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

48. Plaintiff Sharon Pizarro is a citizen of New York.

49. Defendant Ferrara Candy Company is a Illinois corporation with a principal place of business in Chicago, Cook County, Illinois.

50. Diversity exists because plaintiff Sharon Pizarro and defendant are citizens of different states.

51. Upon information and belief, sales of the Product and statutory and other monetary damages, exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

52. Venue is proper because a substantial part of the events or omissions giving rise to

the claim occurred here – plaintiff's purchase of the Product.

53. Venue is further supported because many class members reside in this District.

Parties

54. Plaintiff Sharon Pizarro is a citizen of New Rochelle, Westchester County, New York.

55. Defendant Ferrara Candy Company is a Illinois corporation with a principal place of business in Chicago, Illinois, Cook County.

56. Defendant is one of the world's largest manufacturers of candy and baked goods.

57. During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within her district and/or State in reliance on its representations and omissions.

58. Plaintiff bought the Product at Stop and Shop Supermarket, 2425 Palmer Ave, New Rochelle, NY 10801, between November 21 and December 21, 2020.

59. Plaintiff bought the Product at or exceeding the above-referenced price because she liked the product for its intended use and relied upon its representations it contained "real" fudge.

60. Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

61. The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

62. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labeling is consistent with its composition.

Class Allegations

63. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

64. Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a monetary relief class.

65. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

66. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

67. Plaintiff is an adequate representative because her interests do not conflict with other members.

68. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

69. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

70. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

71. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL") §§ 349 & 350
(Consumer Protection Statutes)

72. Plaintiff incorporates by reference all preceding paragraphs.

73. Plaintiff and class members desired to purchase a product which contained "real" fudge, understood by them as being made with basic, simple ingredients

74. Defendant's acts and omissions are not unique to the parties and have a broader

impact on the public.

75. Defendant misrepresented the Product through its statements, comparisons, omissions, ambiguities and actions.

76. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

77. Plaintiff incorporates by reference all preceding paragraphs.

78. Defendant had a duty to truthfully represent the Product, which it breached.

79. This duty is based on defendant's position, holding itself out as having special knowledge and experience in the sale of the product type.

80. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

81. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

82. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Fraud

83. Plaintiff incorporates by reference all preceding paragraphs.

84. Defendant misrepresented the attributes and qualities of the Product.

85. Defendant's fraudulent intent is evinced by its failure to accurately disclose the issues described herein, when it knew not doing so would mislead consumers.

86. Plaintiff and class members would not have purchased the Product or paid as much

if the true facts had been known, suffering damages.

Unjust Enrichment

87. Plaintiff incorporates by reference all preceding paragraphs.

88. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;
3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;
4. Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;
5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and
6. Other and further relief as the Court deems just and proper.

Dated: January 8, 2021

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

                                                                _______________________________

Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
spencer@spencersheehan.com
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056
Kleinman LLC
Abraham Kleinman
626 RXR Plaza
Uniondale, NY 11556-0626
Tel: (516) 522-2621
akleinman@kleinmanllc.com

7:21-cv-00151
United States District Court
Southern District of New York

Sharon Pizarro, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Ferrara Candy Company,

Defendant

Class Action Complaint

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: January 8, 2021

/s/ Spencer Sheehan
Spencer Sheehan